IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

THE CONTINENTAL INSURANCE COMPANY,            PLAINTIFF

v.            Case No. 5:23-cv-05037-PKH

THE CINCINNATI INSURANCE COMPANY;
COLONY INSURANCE COMPANY;
COMMERCE & INDUSTRY INSURANCE COMPANY;
HDI GLOBAL SPECIALTY SE F/K/A INTERNATIONAL
INSURANCE COMPANY OF HANNOVER LTD.;
NATIONAL AMERICAN INSURANCE COMPANY;
SCOTTSDALE INSURANCE COMPANY;
WESTERN WORLD INSURANCE COMPANY; AND
JOHN DOE INSURANCE COMPANY(IES) 1-20,            DEFENDANTS

**THE CONTINENTAL INSURANCE COMPANY'S RESPONSE TO
HDI GLOBAL SPECIALTY SE'S MOTION TO DISMISS [DOC. #72]**

The Continental Insurance Company ("Continental") has sufficiently stated facts that support its causes of action for declaratory judgment, subrogation, and contribution against HDI Global Specialty SE ("HGS") so as to comport with *Twombly* and *Iqbal* pleading standards.[1] HGS's motion to dismiss [Doc. #72], therefore, should, in all things, be denied.

**INTRODUCTION**

HGS's motion – as concerns Continental[2] – is premised primarily on the argument that Texas' anti-indemnity statute is the risk-shifting gatekeeper that determines HGS's additional insured defense obligation in this case.[3] HGS is incorrect. Ark. Code §4-56-104 is the gatekeeper here. That is because the construction contract between HGS's named insured, Prestige, and Thompson Thrift Construction, Inc. – which requires "[a]ny insurance policy with

---

[1] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

[2] HGS's motion also seeks dismissal of National American Insurance Company's cross-claim. Continental addresses only HGS's arguments against Continental.

[3] Doc. #73, Pages ID#1067 – 1073.

the exception of Workers Compensation" that Prestige was required to procure and maintain to provide additional insured coverage to Thompson Thrift – designates Arkansas law as governing its interpretation and enforcement.[4] While Texas law may apply to interpreting the HGS policy, the propriety of the insurance provision contained in the Thompson Thrift/Prestige Subcontract – that gives rise to HGS's duty to defend Thompson Thrift as an additional insured – is determined by Arkansas law. Because this additional insured provision is permissible under Ark. Code §4-56-104 (eff. July 27, 2011), the Thompson Thrift/Prestige Subcontract's additional insured coverage requirement must be enforced as written.[5]

HGS's alternative argument concerns the HGS Policy's contractual liability exclusion. HGS's argument appears to pertain to the duty to indemnify Thompson Thrift as an additional insured.[6] Continental does not seek a determination regarding the duty to indemnify Thompson Thrift. To the extent Continental's complaint suggests that it does, Continental hereby judicially admits that the relief it seeks does not concern the duty to indemnify Thompson Thrift. To the extent HGS argues that the contractual liability exclusion precludes HGS's duty to provide Thompson Thrift an additional insured defense, HGS misapprehends Texas law on this issue. *Gilbert Texas Construction, LP v. Underwriters at Lloyd's London,* 327 S.W.3d 118, (Tex. 2010), the case on which HGS relies, is a duty–to-indemnify decision based on a settlement reached after all tort claims against Gilbert had been dismissed with prejudice. The dismissal of the tort claims cut off any potential for tort liability, leaving breach of contract as the sole basis for damages that Gilbert faced. Indeed, the *Gilbert* court stressed that had Gilbert faced both tort

---

[4] This construction contract – between Thompson Thrift Construction

[5] It is noted that the Thompson Thrift/Prestige Subcontract's contractual indemnity provision at ¶17 complies with Ark. Code §4-56-104(b) (and TAIA for that matter) as it does not require that Thompson Thrift be indemnified for its sole negligence. Contractual indemnity is not at issue in this lawsuit.

[6] Doc 73, at PageID#1074 – 1075.

and breach of contract liability leading up to the settlement, the contractual liability exclusion would not have barred the duty to indemnify coverage.[7] The *Gilbert* court also emphasized that its decision did not disturb the court's duty-to-defend edict in *Lamar Homes*.[8] In sum, there is no road, based on Texas's application of the contractual liability exclusion, to defeating HGS's duty to defend Thompson Thrift as an additional insured.

As for HGS' date-of-tender argument,[9] Continental acknowledges that Texas requires the tender of suit papers to start the clock regarding the duty to defend. That said, Continental is aware of no Texas authority, and HGS points to none, that stand for the proposition that a letter addressed to someone other than an insurer trigger an insurer's duty to defend. Nor is Continental aware of Texas authority holding that an insurer that refuses to accept a tender permits an insurer to avoid its defense obligation to an insured, which HGS implies. Moreover, it bears reiterating here that in deciding HGS's Rule 12(b)(6) motion to dismiss, Continental's complaint allegations are taken as true.[10]

## BRIEF BACKGROUND

1. West Center Partners, LLC hired Thompson Thrift to design and construct an apartment building known as the West Center Student Housing Project located in Fayetteville, Arkansas (the "Project"). Thompson Thrift, in turn, subcontracted with various trades to perform the work to construct the Project. These written agreements required its subcontractors to purchase and maintain commercial liability insurance that affords additional insured coverage to

---

[7] *Gilbert,* 327 S.W.3d at 135 ("the exception for liability for damages Gilbert would have in the absence of the DART contract is inapplicable where, as here, . . . liability is based on its contract.")

[8] *Lamar Homes, Inc. v. Mid-Continent Cas. Co.,* 242 S.W.3d 1 (Tex. 2007) (reiterating that the duty to defend is determined by the underlying pleadings factual allegations, and holding that a breach of contract claim can involve an occurrence and coverage does not turn on the label of the cause of action). *See* discussion *Infra*, at ¶¶ 21 -23.

[9] Doc 73, at PageID#1073 – 1074.

[10] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

Thompson Thrift. The insurers named in this lawsuit issued commercial liability insurance to at least one of the subcontractors that performed work on the Project, and their respective policy(ies) afford additional insured status and coverage to Thompson Thrift. The Project subcontractor to whom Continental issued commercial general liability insurance is ICrete Technologies, LLC.

2. On July 25, 2019, West Center commenced an arbitration against Thompson Thrift, styled and numbered AAA Case Number 02-19- 0002-3446, *In the Matter of the Arbitration between West Center Partners, LLC vs Thompson Thrift Construction, Inc. and Fidelity and Deposit Company of Maryland* ("Arbitration"). West Center also filed a lawsuit styled *West Center Partners, LLC v. Thompson Thrift Construction and Fidelity and Deposit Company of Maryland*, 72CV-19-1960, on July 26, 2019 in the Circuit Court of Washington County, Arkansas (the "West Center Lawsuit"). On July 15, 2020, West Center voluntarily dismissed the West Center Lawsuit to pursue its claims against Thompson Thrift in the Arbitration.[11] Continental began defending Thompson Thrift in July 2020.

Continental stepped up, met its obligation, and funded Thompson Thrift's defense as an additional insured regarding the Arbitration.[12] The other carriers named in this suit, HGS included, did not, without, Continental contends, lawful basis.

---

[11] Thompson Thrift third-partied subcontractors into the West Center Lawsuit, and was unsuccessful in its attempt to join the subcontractors into the Arbitration.

[12] By the time Continental assumed Thompson Thrift's defense July 2020, West Center had voluntarily dismissed the West Center Lawsuit, and in December 2020, Thompson Thrift dismissed its third-party complaint against the Project subcontractors that it named in the West Center Lawsuit.

## NATURE AND STAGE OF THE PROCEEDINGS

3. This is a coverage dispute between insurers. Continental seeks to recover from HGS – and the other defendant subcontractor insurers – their pro rata share of fees and expenses that Continental paid to defend Thompson Thrift.

4. Continental commenced this lawsuit March 9, 2023. [Doc. #2] The pleadings closed September 1, 2023, following the answers filed, respectively, by Cincinnati [Doc. #40], Colony [Doc. #38], Commerce & Industry and Western World [Doc. #41], HGS [Doc. ##52, 72], National American [Doc. #37], and the answers filed to National American's cross-claims and counters.

5. The Court entered the Final Scheduling Order on June 12, 2023 [Doc. #60]. This case is scheduled for jury trial at the call of the Court during the week of July 15, 2024.

6. Initial disclosures were exchanged in July and some written discovery has been served. Specifically, Continental served interrogatories and requests for production in mid-August requesting, in particular, information and documents indicating when each of the defendant insurers were first notified of the West Center Lawsuit and/or the Arbitration.

7. As of this filing, HGS's motion to dismiss [Doc. #72] is the sole matter pending before the Court for disposition.

## LEGAL STANDARD – RULE 12(c) MOTION TO DISMISS

8. Continental agrees with HGS that the standard applied to a Rule 12(c) motion is the same standard applied to a motion to dismiss under Rule 12(b)(6). *See, e.g., Knowles v. Standard Fire Ins. Co.*, No. 4:11–cv–04044, 2013 WL 6497097, at *2 (W.D. Ark. Dec. 11, 2013).

9. The court is obliged to deny a Rule 12(b)(6) motion to dismiss where a complaint "states a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009)  A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)  The facts stated in the complaint are assumed true and are construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).[13]  The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of its claim. *Id*.  Continental's complaint more than sufficiently satisfies these requirements.

10. It should be noted that Rule 12(b)(6) motions to dismiss generally are disfavored by the courts. *See, e.g., Z.J. v. Kansas City,* Case No.: 4:15-cv-00621-FJG, 2016 WL 4126569, at *2 (W.D. Missouri Aug. 2, 2016) (citation omitted).  Even when a complaint fails to state a claim – which is not the case here – the court should generally give the plaintiff a chance to amend unless amendment would be futile. *See, e.g., Great Plains Trust Company v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).  Amendment is futile only if an

---

[13]  *Keckhafer v. Prudential Ins. Co. of America,* No. Civ.01–1017 RHK/AJB, 2002 WL 31185866, at *10, nn. 11-12 (D. Minn. Oct. 1, 2002) (holding that pleadings include the complaint, documents attached to the complaint, as well as any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint. A document is central when it is necessary to establish an element of a plaintiff's claim.)

The documents attached to Continental's complaint that are relevant here are (i) the West Center complaint at [Doc #2-2], and (ii) the West Center statement of claims at [Doc #2-3], and (iii) the Thompson Thrift/Prestige Subcontract at [Doc. #2-7].[13]  For ease of reference, a copy of each of these documents is provided with this Response.

The documents attached to HGS's motion that are central to Continental's claims against HGS are (i) the HGS Policy at [Doc #73-1], and (ii) the Arbitration Award at [Doc #73-2] filed under seal.  Continental asks the Court to take judicial notice of these documents. *See, e.g., Saylor v. Frakes,* 8:20CV264, 2022 WL 2304673, at *2 (D. Neb. June 27, 2022) (the court may take judicial notice of its own records and files in considering a motion to dismiss).

amended complaint would still fail to state a claim. *See, e.g., Mandujano v. City of Pharr, Texas*, 786 F. App'x. 434, 438 (5th Cir. 2019).

## ARGUMENT

**Arkansas' Anti-Indemnity Statute - Ark. Code §4-56-104(b) – Not Texas's Anti-Indemnity Act, Applies to the Thompson Thrift/Prestige Subcontract.**

11.　To evade the additional insured defense it owes to Thompson Thrift, HGS incorrectly points the Court to Texas's anti indemnity statute – Tex. Ins. Code. §151.001 et. seq. ("TAIA"). HGS argues that TAIA applies because it delivered its *policy* to its named insured – Prestige – in Texas. To further lure the Court down the incorrect path to the TAIA, HGS engages in an elaborate, but wholly irrelevant, choice of law analysis, again, based on HGS having delivered its *policy* to Prestige in Texas.

12.　However, the TAIA – like Arkansas' anti-indemnity statute: Ark. Code §4-56-104(b) – pertains to construction contracts, *e.g.*, the Thompson Thrift/Prestige Subcontract, not insurance policies. Moreover, the Thompson Thrift/Prestige Subcontract actually contains a choice of law provision that must be respected.

> **25. Miscellaneous Provisions**: The following terms, provisions and definitions shall apply to this Agreement:
> * * * * *
> (b) This Agreement shall be interpreted and enforced according to the laws of the State of Arkansas.

*See* Doc #2-7 at Page ID#404.

13.　This provision not only invalidates the propriety of HGS's choice of law analysis, but it illuminates that the Thompson Thrift/Prestige Subcontract is governed not by Texas's anti-indemnity statute, but instead by Ark. Code §4-56-104(b). In sum, TAIA cannot excuse HGS's additional insured defense obligation to Thompson Thrift. And because this additional insured provision is permissible under Ark. Code §4-56-104 (eff. July 27, 2011), paragraph 18 of the

Thompson Thrift/Prestige Subcontract – which requires "any insurance policy with the exception of Workers Compensation provided to [Prestige]" to provide additional insured coverage to Thompson Thrift – must be enforced as written.

**HGS Improperly Conflates its Duty to Defend Thompson Thrift with the Duty to Indemnify, which is Not at Issue in this Lawsuit.**

14. Having established that Thompson Thrift qualifies as an additional insured under the HGS Policy, HGS's duty to defend Thompson Thrift is determined under Texas's eight-corners rule. *American Reliable Insurance Company v. Weisinger,* Civil Action No. 4:22-CV-03289, 2023 WL 5185147, at *1 (S.D. Tex. Aug. 11, 2023) ("Texas uses the 'eight-corners' rule to determine whether an insurer has a duty to defend its insured."). "According to the eight-corners rule, the scope of an insurer's duty to defend is determined exclusively by the allegations in the pleadings and the language of the insurance policy." *Id.* (citing *GuideOne Specialty Mut. Ins. Co. v. Missionary Church of Disciples of Jesus Christ*, 687 F.3d 676, 682-83 (5th Cir. 2012). "The underlying pleadings are read liberally and any doubts about coverage must be resolved in favor of the insured – if even one claim in the underlying litigation potentially falls within the insurance policy's coverage, the insurer is required to provide a complete defense." *Id.* (citing *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 552 (5th Cir. 2004). This analysis does not consider the possible truth or falsity of the allegations in the underlying litigation. *Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589 (5th Cir. 2011). Indeed, the facts in the pleadings are presumed to be true. *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 24 (Tex. 1965). Ultimately, Texas requires "[w]hen in doubt, defend." *Gore Design Completions Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 369 (5th Cir. 2008).

**West Center's Complaint [Doc #2-2] and West Center's Statement of Claims [Doc #2-3] Implicate Prestige's Scope of Work regarding the Project.**

15. HGS contends that it has no duty to defend Thompson Thrift because West Center did not name Prestige as a party to the West Center Lawsuit or its Arbitration, and did not allege Thompson Thrift to be vicariously liable for Prestige's acts or omissions. Doc. #73, PageID#1071 -1072. HGS' argument apparently being that "caused in whole or part by " language in HGS's blanket additional insured endorsement requires direct allegations against Prestige as a litigant defendant or vicarious liability allegations against Thompson Thrift regarding Prestige's acts or omissions.

16. However, Texas does not require West Center to sue Prestige or to allege that Thompson Thrift is vicariously liable for Prestige's acts or omissions for HGS to be obligated to defend Thompson Thrift under its "caused in whole or in part by" additional insured endorsement. In *American Empire Surplus Lines Insurance Co. v. Crum & Forster Specialty Insurance Co.*,[14] independent contractors, rather than employees, of the named insured brought a suit against the general contractor additional insured. The central question facing the court was whether the "caused in whole or in part by" language limited the additional insured's coverage to those situations in which it was being held derivatively or vicariously liable for the named insured's actions, as Crum & Forster argued, or if the phrase was broader and covered all injuries caused in some way by the named insured. *Id*. at *6. The *American Empire* court rejected Crum & Forster's argument, finding that the phrase could be given a definite meaning and legal effect:

> The focus of the definition of additional insured coverage in the "whole or in part" sentence is on whether Plaintiffs allege a theory in the operative pleading in the Underlying Lawsuit under which [the additional insured] could be held liable for conduct by [the named insured] that "caused" injury to a third party in any way.

---

[14] *American Empire Surplus Lines Insurance Co. v. Crum & Forster Specialty Insurance Co.*, No. H–06–004, 2006 WL 1441854 (S.D.Tex. May 23, 2006).

> The sentence does not address the conduct of the other wrongdoer or wrongdoers, whether they be the additional insured [ ] or not. *Id.* at *7.

*American Empire*, therefore, instructs that the duty to defend inquiry focuses on whether the facts in the underlying petition set forth a theory that the named insured in some way caused the injury, which is the case here.

17. The Thompson Thrift/Prestige Subcontract specifies that Prestige's scope of work pertained to the Project's siding [Doc. #2-7, PageID#391], which among other things, protects the building/structure from water intrusion and weather impacts. The West Center complaint that commenced the West Center Lawsuit contains the following allegations:

> "West learned of defects and defective construction regarding the Project. . . . The defective construction involves, however, for example, leakage and water penetration issues, including the building wrap and cladding system. The repairs to be made to correct the defective construction will include addressing the building wrap, cladding system, balcony water-proofing systems, and other aspects of construction." [Doc. # 2-2 at ¶4, PageID#99]

West Center's Amended Statement of Claim submission in the Arbitration contains, inter alia, the following allegations:

> Removal and replacement of all existing wall siding on all walls that have penetrations or openings [which now has been extended to place all existing wall siding with replacement and installation as detailed in the report.] [Doc. 2-3, PageID#102]

> The Intertek Report and Scope of Work and the Nabholz Base Bid included all of the siding and building envelope with penetrations in the walls. . . . [Doc. 2-3, PageID#105]

Both West Center's complaint and its statement of claim contains allegations of property damage "caused in whole or in part by" Prestige's conduct, and such allegations are more than sufficient under Texas' duty to defend law, so as to require HGS to defend Thompson Thrift regarding the West Center Lawsuit and the Arbitration.

**A fact Question Exists as to When HGS's Obligation to Defend Thompson Thrift Began, and regarding Late Notice, Texas Requires a Showing of Prejudice.**

18. Continental starts with reiterating the 12(b)(6) standard that pleading allegations are deemed true for purposes of evaluating a motion to dismiss. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). That HGS disagrees with or disputes Continental's allegation at paragraph 33 of its Complaint that "Thompson Thrift tendered the Arbitration (and/or the West Center Lawsuit) to [HGS] . . . by letter dated July 19, 2019, by letter dated December 28, 2021, and/or by letter dated December 13, 2022" is of no moment in evaluating HGS's motion to dismiss.

19. And while Continental does not dispute that the July 2019 and the December 2021 letters were not addressed to HGS, that fact is not dispositive of when HGS's obligation to defend Thompson Thrift was triggered. Continental is entitled to conduct discovery on the question of when HGS first had notice of the Arbitration (or the West Center Lawsuit) and what prejudice, if any, HGS suffered regarding such notice, and HGS' motion to dismiss is an improper attempt to deprive Continental of its right to do so.

20. As an aside, HGS states that it "denied receipt of the [December 13, 2022] letter. [Doc. #73, PageID#1064]. Refusing to accept receipt of a letter should not be sanctioned, especially in the context of late notice.

**HGS Misapprehends *Gilbert Tex. Construction* as treating the contractual liability exclusion as a breach of contract exclusion; that is not the law in Texas.**

21. First, *Gilbert* is factually distinguishable. Gilbert actually assumed in its contract with the Dallas Area Rapid Transit liability that Gilbert otherwise would not have faced in the absence of a contract. Gilbert agreed to repair damages to the property of third-parties even if Gilbert did not cause the damage. *Gilbert,* 327 S.W.3d 118, 122 (Tex. 2010). Those are not the facts here.

22. Importantly, since its ruling in *Gilbert,* the Texas Supreme Court has tempered the reach of *Gilbert*. In *Ewing Const. Co., Inc. v. Amerisure Ins. Co.*, 420 S.W.3d 30 (Tex. 2014) the Texas Supreme Court ruled that an insured contractor's express agreement to perform in a workmanlike manner is not an "assumption of contractual liability" and does not trigger application of the contractual-liability exclusion. *Id.* at 37 ("[T]he exclusion means what it says: it excludes liability for damages the insured assumes by contract unless the exceptions bring the claim back into coverage. But we also determined in *Gilbert* that "assumption of liability" means that the insured has assumed a liability for damages that exceeds the liability it would have under general law. [ ] Otherwise, the words "assumption of liability" are meaningless and are surplusage.") (internal and external citations omitted).

23. Additionally, Texas courts have declined to treat the contractual liability exclusion as being a breach of contract exclusion. The Fifth Circuit has summarized the state of play in Texas:

> In sum, [Texas Supreme Court cases] maintain that for a contractual-liability exclusion to apply, the insurer must prove that a contractually-assumed duty effected an expansion of liability beyond that supplied by general law. The arbitrator in this case determined that Arrow violated an express duty to repair work that did not conform to the requirements of its construction contract with the Crownovers. Mid-Continent has failed to proffer evidence creating a dispute of fact as to whether the arbitrator's award was based on liability greater than that dictated by general law. Therefore, the contractual-liability exclusion from coverage does not apply.

*Crownover v. Mid-Continent Cas. Co.*, 772 F.3d 197, 210 (5th Cir. 2014) (citations omitted). The upshot is that Texas has avoided equating the contractual-liability exclusion with a denial of coverage for breach-of-contract claims. Thus, to the extent HGS argues that the contractual liability exclusion defeats HGS's duty to defend Thompson Thrift as an additional insured, Texas law says otherwise.

## CONCLUSION

For each and all of these reasons, the Court should deny HGS's motion to dismiss, and Continental respectfully asks the Court to do so. Continental asks for such other relief as the Court deems appropriate.

Date: October 5, 2023

Respectfully submitted,

By:    */s/ Pamela Dunlop Gates*
     Pamela Dunlop Gates
     Texas State Bar No. 06239800
     (*Admitted July 27, 2016*)

CORPORATE LITIGATION
CNA
Apex at Legacy
5801 Headquarters Drive, Suite 750A
Plano, Texas 75024-6189
(214) 220-5921 – Direct Dial
pamela.dunlopgates@cna.com – Email
ATTORNEYS FOR THE CONTINENTAL INSURANCE COMPANY

## CERTIFICATE OF SERVICE

I, undersigned counsel certifies that on October 5, 2023, the foregoing *The Continental Insurance Company's Response to HGS Global Specialty, SE's Motion to Dismiss [Doc. #72]* was electronically filed using the Court's CM/ECF filing system and served to the following via the Court's CM/ECF filing system, who are registered ECF filers in the United States District Court for the Western District of Arkansas:

Laura J. Grabouski, Esq.
lauragrabouski@holdenlitigation.com
Steven E. Holden, Esq.
stevenholden@holdenlitigation.com
HOLDEN LITIGATION
10000 North Central Expressway, Suite 360
Dallas, Texas 75231
(214) 745-8888 - Telephone
(918) 295-8889 - Facsimile
ATTORNEYS FOR HGS GLOBAL SPECIALTY SE f/k/a INTERNATIONAL INSURANCE COMPANY OF HANNOVER LTD

Steven K. Metcalf, Esq.
smetcalf@metcalfspitlerlaw.com
William Spitler, Esq.
wspitler@metcalfspitlerlaw.com
METCALF & SPITLER, LLP
20 East Fifth Street, Suite 750
Tulsa, Oklahoma 74103
Tulsa, Oklahoma 74103
(918) 508-2870 - Telephone
(918) 551-7253 - Facsimile
ATTORNEYS FOR NATIONAL AMERICAN INSURANCE COMPANY

David M. Donovan, Esq.
david.donovan@wdtc.law
Taylor N. Williams, Esq.
taylor.williams@wdtc.law
WATTS, DONOVAN, TILLEY & CARSON, P.A.
2120 Riverfront Drive, Suite 275
Little Rock, AR 72202
(501) 372-1406 - Telephone
ATTORNEYS FOR COLONY INSURANCE COMPANY

Shane Strabala, Esq.
shane.strabala@mrmblmv.com
MUNSON, ROWLETT, MOORE & BOONE
One Allied Drive, Suite 1600
Little Rock, AR 72202
(501) 374-6535 - Telephone
(501) 374-5906 - Facsimile
ATTORNEYS FOR COMMERCE & INDUSTRY INSURANCE COMPANY & WESTERN WORLD INSURANCE COMPANY

Christina A. Culver, Esq.
cculver@thompsoncoe.com
Brian S. Martin, Esq.
bmartin@thompsoncoe.com
David M. Taylor, Esq.
dtaylor@thompsoncoe.com
THOMPSON, COE, COUSINS & IRONS, LLP
One Riverway, Suite 1400
Houston, Texas 77056-1988
(713) 403-8210 - Telephone
(713) 403-8299 - Facsimile
ATTORNEYS FOR SCOTTSDALE INSURANCE COMPANY

Brian F. Walthart, Esq.
LEWIS BRISBOIS BISGAARD & SMITH, LLP
1222 Demonbreun Ave., Suite 1801
Nashville, Tennessee 37203
615-439-2689 - Telephone
615-439-2701 - Facsimile
brian.walthart@lewisbrisbois.com
ATTORNEYS FOR THE CINCINNATI INSURANCE COMPANY

/s/ Pamela Dunlop Gates
Pamela Dunlop Gates